# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1638-23

G.S.,

    Plaintiff-Appellant,

v.

K.F.,

    Defendant-Respondent.

_____

        Submitted June 3, 2025 – Decided July 31, 2025

        Before Judges Susswein and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1694-24.

        Detommaso Law Group, LLC, attorneys for appellant (Gregory A. Pasler, of counsel and on the briefs).

        K.F., respondent pro se.

PER CURIAM

Plaintiff G.S.[1] appeals from the January 26, 2024 Family Part order denying his request for a final restraining order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, and dismissing his temporary restraining order (TRO) against defendant K.F.  After reviewing the record in light of the parties' arguments and the governing legal principles, we affirm.

We presume the parties are familiar with the pertinent facts and procedural history leading to this appeal, which we need only briefly summarize.  The parties lived together, co-owned their dwelling, and have a child in common. Defendant moved out of the residence but returned several times.  Plaintiff obtained a TRO in August 2023, which was dismissed when the parties agreed to an October 10, 2023 consent order with civil restraints.  Defendant returned to the curb of their shared residence.  Police arrived and defendant eventually left.  Plaintiff then filed for another TRO on November 8, 2023, which was granted and later amended on January 5, 2024 to include stalking as a predicate

---

[1]  We use initials to protect the privacy and confidentiality of these proceedings. R. 1:38-39(d)(10).

act.[2] The parties vigorously dispute defendant's purpose for returning to the residence. Defendant maintains she was merely retrieving mail from the mailbox. Plaintiff alleges that she returned to harass him.

The trial court made findings of fact and conclusions of law in an oral decision. The court noted that "it was hard for [it] . . . to know exactly what the truth is[,]" and it was "not sure who was telling the truth and without proof of same by either party, [it could not] make any true factual findings with regard to many of the disputed facts in this record."

The trial court further found that:

> In this matter, subsequent to the execution of a consent order, there was a curbside visit to the home, presumably to retrieve mail, no entrance to the property or stepping foot on the property, only one time after the consent order with [defendant] asserting she believed she could still retrieve the mail from the mailbox at the curb and her testimony is that she had, in fact, done that before. It was her belief she could.
>
> That statement is not corroborated in any of the evidence submitted, except her mother's testimony. It's plausible, mostly plausible because there's nothing in the record to show that [defendant] reached out to [plaintiff] in any manner subsequent to her leaving the home in June. She returned some number of times, at

---

[2] We note that plaintiff does not address the stalking predicate act on appeal; thus, we do not consider the issue. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

A-1638-23

which she took items and may very well have exchanged words with [plaintiff].

The trial court ultimately concluded it was "not persuaded by a preponderance of the evidence" that plaintiff proved defendant committed a predicate act of domestic violence. This appeal followed.

Plaintiff contends the trial court erred when it dismissed plaintiff's amended November 8, 2023 TRO "as defendant refused to leave plaintiff alone, terrorized him, and knowingly violated the restraints contained in the October 10[], 2023 consent order."

The scope of our review is limited. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We must "accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). Further, "[d]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare, 154 N.J. at 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). The trial court "has a better perspective than a reviewing court in evaluating the veracity of witnesses" because the "trial court hears the case, sees and observes the witnesses, [and]

4

hears them testify." Ibid. (alteration in original) (internal quotation marks omitted) (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988)). Accordingly, we will not disturb the factual findings of the trial court unless they are so "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C., 463 N.J. Super at 428 (quoting S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010)).

The PDVA authorizes courts to issue an FRO against a person "after a finding . . . is made that an act of domestic violence was committed by that person." N.J.S.A. 2C:25-29(a). When determining whether to grant an FRO, the judge must make two sequential determinations. See Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2020). Under the first Silver prong, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). If the judge finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126.

A-1638-23

In State v. Hoffman, our Supreme Court explained that "[a]t its core, the [PDVA] effectuates the notion that the victim of domestic violence is entitled to be left alone. To be left alone is, in essence, the basic protection the law seeks to assure these victims." 149 N.J. 564, 585-86 (1997). That admonition, of course, presupposes that a predicate act of domestic violence has been committed.

This appeal focuses on the first prong of the Silver test. We reiterate and stress that under the PDVA, a plaintiff is required to prove by a preponderance of the evidence that the defendant committed at least one of the offenses listed in N.J.S.A. 2C:25-19(a). We note that while a violation of a civil restraint is relevant to proving intent as part of the totality of the circumstances, violations of matrimonial restraints are not per se acts of domestic violence. See N.B. v. S.K., 435 N.J. Super. 298, 307-08 (App. Div. 2014).

In J.D. v. M.D.F., our Supreme Court acknowledged that "[n]ot all offensive or bothersome behavior . . . constitutes harassment." 207 N.J. at 483. The Court added, "[n]or are a plaintiff's mere assertions that the conduct is harassing sufficient." Id. at 384 (citing Chernesky v. Fedorczyk, 346 N.J. Super. 34, 40 (App. Div. 2001)). Importantly for purposes of this appeal, the J.D. Court

A-1638-23

explained, "[t]o be sure, the decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Ibid.

To establish that defendant committed the predicate act of harassment, plaintiff was required to prove that she acted with the purpose to harass. See Corrente v. Corrente, 281 N.J. Super. 243, 249 (App. Div. 1995) ("Integral to a finding of harassment . . . is the establishment of the purpose to harass, which is set forth in the statute itself."). As we have noted, the parties present dramatically different interpretations of defendant's purpose for returning to the residence on the occasion that gave rise to the TRO.

The trial court after hearing the witnesses and examining the exhibits concluded that plaintiff failed to prove that defendant committed a predicate act of domestic violence by a preponderance of the evidence. Given the deferential standard of our review, we decline to second guess the trial court's conclusion that plaintiff failed to satisfy the first prong of the Silver test. While this is a close case turning largely on witness credibility, we are unpersuaded that the court's findings are "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." C.C., 463 N.J. Super at 428.

A-1638-23

In reaching this conclusion, we are mindful that one of the key purposes of the PDVA is to "'assure the victims of domestic violence the maximum protection from abuse the law can provide.'" G.M. v. C.V., 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting State v. Brown, 394 N.J. Super. 492, 504 (App. Div. 2007)); see also N.J.S.A. 2C:25-18. We note in closing that should defendant violate the consent order in the future, an ensuing FRO application may lead to a different outcome, since any future violation, viewed in context with the incident at issue in the present appeal, would support an inference that defendant returned to the property with the purpose to harass plaintiff.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1638-23